CATHERINE M. BOUDREAU *vs.* ABRAHAM SHATKIN.

JANUARY 11, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is an action of the case brought to recover damages for a scalp burn which the plaintiff alleges that she sustained while she, with exercise of due care, was having her hair given a permanent wave at a hairdressing establishment owned and operated by the defendant, and which burn she alleges was caused by the defendant's negligence. At a jury trial in the superior court a verdict for her of $1000 was returned. After a hearing on a motion by the defendant

for a new trial, the grounds alleged being, in substance, that the verdict was against the weight of the evidence and was grossly excessive, the trial justice found that the damages, as awarded by the jury, were excessive to the extent of $500, but overruled the other grounds alleged in the motion.

The plaintiff having filed a remittitur of that amount, the defendant's motion was denied and the case is now before us on a bill of exceptions by him, in which the only ones relied upon before us are to that portion of the charge of the trial justice to the jury in which he told them that there was no question of contributory negligence by the plaintiff and to his denial of the defendant's motion for a new trial as based on the ground that the verdict was against the weight of the evidence, and as based on the ground that the verdict was grossly excessive, the defendant contending that, even as reduced by the plaintiff's remittitur to $500, it was still clearly excessive.

The gist of the plaintiff's testimony was as follows: She entered the defendant's establishment and asked for a permanent wave. She first had a shampoo and then her hair was dried. It was then moistened slightly and rolled on curlers; and little pads were put on. These things were done by a male attendant. Then the defendant himself put on her head a cap, with an electric heating apparatus inside, and turned on the current and left her, with the heat on.

There were then, in the large room where she was, twelve to fifteen other women getting permanent waves and eight to ten girls moving about and attending to these other customers. The apparatus on her head got warmer and warmer; and, about ten minutes after the heat was turned on, the cap got very hot, especially on both sides, behind her ears. She said: "This thing is burning me." The girl attendants turned around and looked at her and she said: "It is burning me awfully."

Then the defendant came along and she said: "This thing is burning me." He said: "Wait a minute. I will fix that. I will put another pad." He then did put that pad in and

went away and she did not see him again for five minutes. Then, when he came in, she said: "I can't stand this any longer"; and he said: "I will take it off", and he did so. While he was gone, her head was burning and she said loudly, twice, she thought: "This thing is burning me."

Before the cap was taken off it was very hot and the region behind her right ear burned like a hot coal. She complained to the defendant's wife, who was present in the beauty parlor, that she had been burned and the defendant's wife put some lotion behind both of the plaintiff's ears.

The burned spots behind her ears gave her a great deal of pain for a considerable period of time and she was very nervous. For about a week she had to take certain tablets in order to be able to sleep. Then she went to a physician, and for these spots, which were about the size of a quarter of a dollar, she had fourteen treatments by him, one every two days. He testified that she had a third degree burn and that this is a very severe one and occurs where the tissue of the skin is destroyed; and that hair would not grow again on the burned spot. His bill for his treatment was $42.

For the defendant there was testimony to the following effect from Samuel Orleck, one of the defendant's employees, who was a licensed hairdresser under the laws of this state. On the occasion in question he alone attended to the plaintiff. He shampooed her hair and dried it and combed it out. He then parted it into small sections and wound the hairs in each section on a small rod and put a clamp on them and then a flannel pad dampened with a prepared solution. He then pulled down the permanent heaters upon the pads and turned on the electricity, setting the controlling clock so that the current would continue for ten minutes, the usual time required for a permanent wave, and then stop.

According to his testimony the only way in which he could know that the heat was becoming too great on any part of the plaintiff's head was to have her tell him so, and he continued to stay with her until after the whole permanent waving operation was ended. Near the end of the ten

minutes she complained of the heat. He asked her where she was feeling it and she pointed to a spot at the back of her head near her neck. He then immediately turned the electricity off and put on an additional pad over that spot and again turned on the current and she said it was all right. A few minutes later she again complained of the heat and he at once turned off the current and took from her hair all the things that he had put on it. She appeared to have a good permanent wave and left him without making any complaint. He did not see the defendant in the permanent wave department during the time when the plaintiff was getting her permanent wave.

The defendant testified that he remembered the plaintiff coming into the beauty parlor on the day in question just before he was going out, and he designated Samuel Orleck as the operator for her; that he himself left very soon afterwards; that when he got back she was not there; and that he had nothing to do with her permanent wave.

A sister-in-law of the defendant testified that she was a licensed operator and was in the beauty parlor when the plaintiff was getting a permanent wave; that she herself was then giving one to a customer and did not hear the plaintiff make any outcry; that after the plaintiff had had her treatment the witness spoke to her and the plaintiff said that she had received a burn and pointed to the place where she said the burn was; and that the witness could not see any burn there but put some salve on the place. She testified also that she was where she could see Samuel Orleck giving the plaintiff her permanent wave and that he never left the plaintiff during the process.

Another licensed hairdresser, who was an operator for the defendant at the time when the plaintiff was getting her permanent wave and had practiced hairdressing for about twenty years, was a witness for the defendant. She testified, in substance, that after a customer has been prepared for the baking process and the electricity has been turned on, the operator should not leave the customer while the cur-

rent is on and should ask the customer whether she felt any heat and that if she complained of the heat, it would be good practice for the operator to turn it off.

It was not shown by any evidence that the plaintiff was told that if she felt an uncomfortable amount of heat when the current was on, she should promptly give notice of that fact to the operator who was attending to her; and it is clear, from undisputed and unimpeached evidence, that whenever she felt that the heat was excessive she complained of it in an audible voice. It is also clear from the evidence that it was not good practice for the operator who was giving a permanent wave to a customer to leave her unattended with the waving apparatus on her head and with the electric current on.

In view of these facts and of all the pertinent evidence in the case on the subject, we are of the opinion that there was no evidence from which the jury could find otherwise than that no want of due care on the part of the plaintiff contributed to her injury. We therefore are of the opinion that there is no merit in the exception of the defendant to that part of the charge of the trial justice to the jury which concerned contributory negligence.

On consideration of all the pertinent evidence in the case on the question whether the plaintiff's injury was caused by negligence for which the defendant was responsible, we cannot find that the trial justice, in denying the defendant's motion for a new trial, overlooked or failed to consider any of such evidence or that his decision was clearly not supported by the preponderance of the evidence on that question. While we are of the opinion that the evidence on the subject of damages would have justified him in reducing still further the amount of the verdict, we cannot find that he was clearly wrong in deciding that the verdict, if reduced by a remittitur to $500, would not be grossly excessive. We therefore find that there is no merit in the exception of the defendant to the decision of the trial justice on the motion for a new trial.

. All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment for the plaintiff for the amount of the verdict as reduced by the plaintiff's remittitur.

*Francis J. O'Brien, Alfred H. O. Boudreau,* for plaintiff.

*Isadore S. Horenstein,* for defendant.